RECEIVED
2014 MAY 12 P 1: 2

**IN THE MIDDLE DISTRICT COURT OF ALABAMA**
**DOTHAN DIVISION**

**LORENZO PEARSON, and**
**CLARISSA PEARSON**
**PLAINTIFFS**

MIDDLE DISTRICT ALA

**V.** **CASE NUMBER** 1:14-cv-347-WKW

DEMAND FOR JURY TRIAL

**PEA RIVER ELECTRIC COOPERATIVE INC DEFENDANT 1 AND FARMERS, PRICE, HORNSBY and WEATHERFORD, L.L.P. DEFENDANT 2 AND FICTITIOUS PARTY TO BE ADDED UPON DISCOVERY**
**DEFENDANTS**

**1. JURISDICTION MIDDLE DISTRICT OF ALABAMA**
**DOTHAN DIVISION PURSUANT THE FAIR DEBT CREDIT PROTECTION ACT for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA") AND REQUEST FOR SUPPLIMENTAL JURISDICTION OVER ALL STATE CLAIMS BASED ON JURISDICTION OF FALSE NAME EXCEPTION FOR DEFENDANT 1**

2. **PARTIES: Plaintiffs** Lorenzo Pearson and Clarissa Pearson (hereafter referred as plaintiffs) at P.O. Box 672 Ariton, Alabama 36311 who bring this action against Defendant Pea River Electric Cooperative Inc.(hereafter referred as Defendant 1 or by name ) P.O. Box 969 Ozark, Al 36361-0969 for unlawful action as following for all state claims and the Exception of False Name unser Fair Debt Credit Protection Act (FDCPA) claim. All other FDCPA claims are against Defendants Farmers, Price, Hornsby & Weatherford, L.L.P. Debt Collectors (hereafter refered as Defendant 2 or by name) for Pea River Electric at 100 Adams Place, P.O. Drawer 2228, Dothan, Alabama 36302.

**FACTS AND OR ISSUES AS TO ALL CLAIMS**

3. On or about the first week in February 2014, the Defendant Pea River Electric Cooperative Inc. sent a collector and debt disconnection servicement to our residence at 44 West Main Street Ariton, Alabama threatning to disconnect our electrical service without any legal right to do so.

4. On or about the first week in March 2014, the Defendant Pear River Electric Cooperative Inc.sent a collector and diconnection serviceman to our residence at 44 West Main Street Ariton, Alabama threatening to disconnect my electrical service without any legal right to do so.

5. On or about April 3rd, 2014, Defendant Pea River Electric Cooperative Inc. (billing personal to be identified) and Plaintiff Lorenzo Pearson had two phone conversation about a bill payment that Plaintiff wished to make but was denied.

6. On or about April 3rd, 2014 Plaintiffs, sent a demand for settlement to Defendant via email and certified mail in search of resolving various issues for damages before approaching this court.

7. On or about April 8th, 2014, Defendant Pea River Electric Cooperative Inc. hired a debt collection law firm Defendant 2 which sent a letter to collect a debt claimed owed by Plaintiff Clarissa

Pearson. The bill had been requested to be paid but denied by Defendant 1. The applicationn to this debt has Lorenzo Pearson name and social security number on it as well bearing his job of which was used to satisfy someone who could pay the bill because Clarissa Pearson didn't not work.

**8. FACTS AND OR ISSUES AS TO ALL FDCPA CLAIMS**

9. Under the statue of mini maranda requirement Defendant 2 did not notice their letter was an attempt to collect a debt FROM A DEBT COLLECTOR. This occurred twice once in a written confirmation and second in an email confirmation. Therefore this is direct violation of the statue.

10. Under the statue **15 U.S.C. 1692g –30 Day Validation Notic§ 1692 g** Failure to send the consumer a 30-day validation notice within five days of the initial communication. Defendant 2 did not validate one of the debts which they referenced as due the first week of May, 2014, or send a subsequent confirmaiton likewise. Defendant 2 did infact claim they would act on the debt. Under statue **§ 1692 g(a)(3)** must state Right to Dispute within 30 days. There was no notice given 30 days to dispute as a matter of fact the Defendant 1 came personally to collect the debt. Under statue collector must cease collection efforts until debt is validated **§ 1692 g(b) as stated previously Defendant 1 came out on March 16th, 2014, to collect the debt even though all debts were previoulsy stated by Plaintiffs as paid or un owed in April of 2014.** Under all three statues Defendant 2 fail to follow the statue. Therefore there action is a direct violation of the statues. ALSO, under The FALSE EXCEPTION NAME Defendant 1 is liable for its failure under this statue of FDCPA.

11. *Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**12. GENERAL STATEMENT AS TO ALL CLAIMS**

Under the theory of false name exception under FDCPA Defendant 1 should be held liable as to their own action for what clearly appears to be a confirmaitons from a debt collection law firm as they advertise as such business or service, that clearly has violated many statue and its subsection under FDCPA. Although the claims are asserted seperatley for each defendant(s) its clear their action are in concert with each other under certain statues as given and the same is against both parties as plaintiffs. Whether it's the action against Lorenzo Pearson individually or Clarissa Pearson individually all their action to an ultimate end is to disconnect service of which both parties needed and paid to have or attempted to pay and have. There is a direct correlation between the interest of both plaintiffs and the action of the Defendants that asserted to hinder it. Therefore not only do we assert both Plaintiff parties as real parties in interest but also claim both Defendants should hold liable as to all claims, causes, and damages together at the maximum or under the statue as given, in their respective individual capacity. **V. Civil Liability — 15 U.S.C. § 1692k** The Act provides for a private cause of action for "any person" affected by the violation. It also grants state and federal jurisdiction and allows the plaintiff to recover actual damages, statutory damages of up to $1000, Attorney Fees and costs. 15 U.S.C. 1692k et seq.

13. *Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**14. CAUSE OF ACTION COUNT ONE GENERAL NEGLIGENCE**

**GENERAL NEGLIGENCE:** "To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu,897 (Ala.1992)." Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994). Further, "`[t]he absence of any one of these [elements] renders . . . the evidence insufficient [to establish negligence].'" Franklin v. City of Athens, 938 So.2d 950, 953 (Ala.Civ.App. 2005) (quoting Calvert Fire Ins. Co. v. Green, 278 Ala. 673, 677, 180 So.2d 269, 273 (1965)). Whether a legal duty exists is a question of law. Rose v. Miller & Co., 432 So.2d 1237, 1238 (Ala.1983).

15. Defendant 1 owed a duty to the Plaintiffs not to threaten to disconnect Plaintiffs electricity when it were not due to be disconnected for February or March of 2014 at the specific date and time of which they contemplated to disconnect it.

16. Defendant 1 on or about the first week of February and March of 2014 attempted to disconnect our electricity illegally .

17. The Plaintiffs were not due a disconnection by Defendant 1 on either month as given.

18. Defendant 1 fail their duty owed to Plaintiffs by coming to their residence and threatened to disconnect the Plaintiff electricity on or about the first week of February because they claim we had fail to pay, the power was not due to be disconnected that specific day per record copy of the Plaintiffs' bill. After confirmation and thirty minutes or so of Defendant 1 parked in front of our residence they left but didn't want to without disconnecting our service.

19. Defendant 1 fail their duty owed to Plaintiffs by coming to our residence and threatened to disconnect the Plaintiff's electricity on or about the first week in March of 2014, by coming to Plaintiffs home and threaten to disconnect our electricity when Plaintiff's had arranged payment as agreed.

20. As an approximate action of Defendant 1 the Plaintiffs were made to suffer emotionally by anger, disbelief in how could we do what we are suppose to but being punished unlawfully, agony from despair of when you have not done anything wrong but are being punished by an intimidating powerful company as Defendant 1, and mentally distressed crying from shame and being intimidated when you were not due such action, publicly embarrassed and humiliated by watchful bystanders who know us and looked on and question Plaintiff Lorenzo Pearson of the action of Defendant 1, this cause frustration of why Defendant1 were illegally attempting to disconnect our electricity when they had been arranged for payment upon agreement and had made the same false attempts before, then pure anger because yet again in April using the same false alligations again to deny payment, and other sufferings not due to us on either date as given and too include further suffering after the fact for unbelievable acts forced upon us by Defendant 1 which will show later to be a continuous act of the same and similar illegal aggression.

21. Defendant 1 by their record knew they owed us a duty but fail to follow our rights under it of which would have prevented their action but did not care to harm us anyway. We **say Lorenzo Pearson because they always dealt with him about the electrical bill.**

22. Therefore, due to the approximate and direct action or inaction of Defendant 1 against the Plaintiff's, we have been damaged as to all sufferings listed herein but not limited to just those issues.

23. Wherefore as considering the premises herein, the Plaintiffs request judgment against Defendant 1 for compensatory damages, statutory, additional, actual, perculinary losses, inconsequential damages, actual, perculinary losses, general damages, punitive damages, court cost, and any other relief the court sees fit under the circumstances.

24. *Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

### *25. CAUSE OF ACTION COUNT TWO GENERAL WANTONNESS*

**GENERAL WANTONNESS:** Wantonness has been defined by this court as (a)the conscious doing of some act or the omissions of some duty while knowing of the existing conditions, (b) being conscious that from doing or omitting to do an act, and (c)injury will likely or probable result. Bozeman v. Central Bank of the South, 646 So. 2D 601 (Ala,1994).

26. Defendant 1 knew or should have known by their record we were not due to have our electricity disconnected on either month as given herein or which they threaten to disconnect unwarranted to them and us.

27. In both situations in February and March 2014, Defendant 1 knew we would be without electricity illegally and damaged by their action while they acted with indifference to their record of our account as to our copy and we assert theirs beared the same, which gave them no right to the action they forced on us.

28. In both situations in February and March 2014, Defendant 1 knew or should have known if they came to our home to disconnect our electricity illegally, their attempt which was unlawful and oppressive to us would cause us to be damaged emotionally for being threaten to be without electrical service, and similarly they embarrased us in the public by harrasement, and intimidation with illegal activities.

29. Defendant 1 omitted their own record of our account which evidenced they had no rights of which they sought and forced upon us but made desparaging statements in February that we better be glad.

30. The action and damages thereof of by Defendant 1 has been outlined herein as to the suffering they caused the Plaintiffs.

31. Defendant 1 knew or should have known if they came to our house and disconnected our electricity illegally and or threaten us illegally, we would be injured as to their action and was to forgo electricity of which they contemplated illegally, causing embarrassment, harrasment, shame, upset stomach, headaches, and other sufferings that will be submitted at trial, of which we were not due to have any those day by them.

32. Therefore, as an approximate and direct action or inaction of Defendant 1 we have been damaged and made to suffer and continue as of today.

33. Wherefore as considering the premises herein, the Plaintiffs request judgment against Defendant

1 for compensatory damages, statutory, actual, additional, perculinary losses, inconsequential damages, general damages, punitive damages of $75, 000.00 or any amount applicable by law under the circumstances, court cost, and any other relief the court sees fit under the circumstances.

34. *Plaintiff s repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**35. CAUSE OF ACTION COUNT THREE MENTAL ANGUISH**

**MENTAL ANGUISH:** The Alabama Supreme Court, in Taylor v. Baptist Medical Center, 400 So. 2D 369 (1981) specifically rejected the longstanding rule requiring physical injury, stating "to continue to require physical injury caused by culpable tortuous conduct, when mental suffering may be equally recognized standing alone, would be and adherence to procrustean principles which have little or no resemblance to medical realities." Taylor merely ratified the long standing principle that emotional damages are, and should be considered and distinct from the physical. In Alabama "there is no fixed standard for determining the amount of compensatory damages a jury may award for mental anguish." Delchamps, Inc. v. Bryant, 738 So.2d 824 (1999). The amount awarded is left to the jury's sound discretion subject only by review by the court for clear abuse of discretion." Southern Pine Electric Cooperative v. Burch, 878 So. 2D 1120 (2003). A plaintiff is required only to present some evidence of mental anguish and, if he presents such evidence, the question of how much compensation he is entitled to for mental anguish is a question for the jury. Hathcock v. Wood, 815 So.2d 502 (2001) Mental Anguish includes anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, and inconvenience. Volkswagon of America, Inc v. Dillary, 579 So.2d 1301 (1991) "Claims for damages for mental anguish need not be predicted upon the presence of physical symptoms." Alabama Power Co. v. Harmon, 483 So.2d 386 (1986).

36. The action of Defendant 1 and the suffering caused to Plaintiffs has caused us anxiety by being stressed with upset stomach, headaches, and nervousness by acts of Defendant 1 unwarranted to the Plaintiffs on many occasions going on four months.

37. Plaintiffs as given herein were embarrassed, harrassed, intimidated on the first two occasions by Defendant 1 being parked in the front of our home located downtown on 44 West Main Street, Ariton, AL, of which the entire public can and did witness their actions. Even much as some people in the public questioned their existence specifically asking LORENOZ PEARSON was Defendant 1 here to collect money we owed or did they disconnect our electricity.

38. We were angered because we knew we were not due their presence and intimidation at either time for absolutely any reason due to them at all.

39. We were in fear not knowing if Defendant 1 would disconnect our electricity anyway with a an erroneous and bogus claim of record although we knew and so should they, that they had absolutely no rights to threaten us when our duty was met or not due.

40. We were frustrated by being asked to show proof of our assertion that they had no right of which they appeared to attempt to have our electricity disconnected illegally or that Defendant 1 were here to collect a bill that was not due for cut off on that date, again the came intimidating and harrassing us when the bill was satisfied by Organized Community Action Program (OCAP) voucher, but in fact, we were not due their aggression at all on either month.

41. We were and are disappointed because this has not only happen once but twice and that the month of April they used the same or similar false actions to yet again force more suffering.

42. It's a fact Lorenzo Pearson on or about April 3rd, 2014 asked to pay our bill at a later time on this date but was denied because the Defendant's claimed we did not do what we said last month which was absolutely false.

43. What was said that month is we would go the OCAP get a pay voucher and submit it to Defendant 1 of which was done per our agreement with personal their as they call him "TR". We have reason to believe he is over billing.

44. We received a copy of our action from the Defendant 1, but they did not record it as it was they claimed which is not true at all, but came out and tried to disconnect our electricity anyway.

45. They would go on to say they fail to document it and left our home but then asserted the same negligent claim on or about April 3rd, 2014, when we asked to pay later in the day.

46. Their claim as already given was we didn't do what we said which was absolutely false and they were not allowing us to come in later than when the disconnect personal showed up at our home.

47. All these issue have caused us all other assertions of suffering herein and too include they have cause us to worry when we had done nothing wrong, being annoyed by false claims and unbelievable repetitive negligent action by the Defendant 1 to try and disconnect our service undo to them and us, and being depressive inconvenience knowing you have done what you suppose to or was not due to act at all on either given time of Defendant 1 action. Similarly, now they have threaten to disconnect our service when they clearly denied our agreement to payment the day of cut off of which the bill contemplates.

48. As a final suffering act we have endured Defendant 1 went as far as saying we should be able to pay our bill because we were using a cell phone to call them which they stated was a luxury item which we should not have if we couldn't pay our electric bill, this action falls under every suffering I have mentioned so far.

49. Therefore, as a direct and approximate action or inaction of Defendant 1, we have been made to suffer and continue to suffer until we can attempt to be relieved by them paying damages they have caused to us.

50. Wherefore as considering the premises herein, the Plaintiffs' request judgment for compensatory damages, statutory, actual, additional, perculinary losses, inconsequential damages, general damages, punitive damages of any amount applicable by law, court cost, and any other relief the court sees fit under the circumstances.

51. *Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

***52. CAUSE OF ACTION COUNT FOUR THE FALSE NAME EXCEPTION UNDER FDCPA***

*53. Under the statue of using a false name exception in Vincient [The FDCPA contains, however, the "false name exception" whereby a creditor becomes* ***subject to the FDCPA if "'in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" Mazzei v. Money Store, 349 F. Supp. 2d 651, 658-60 (S.D.N.Y.2004) (quoting 15 U.S.C. § 1692a(6)). "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else,' or 'uses a pseudonym or alias,'" Maguire, 147 F.3d at 235 (quoting Villarreal v. Snow, 1996 WL 473386, 14 at *3 (N.D.Ill. Aug. 19, 1996)), or when a creditor "owns and controls the [pseudonymous] debt collector, rendering it the creditor's alter ego." Mazzei, 349 F. Supp. 2d at 659 (citing Maguire, 147 F.3d at 234-36)*** pursuant FDCPA Defendant 2 never intended to collect the debt(s) by first, never making any additional attempt and secondly, Defendant 1 actually showed up April 16th, 2014, and demanded the payment for the validated amount given in the original confirmaitons by Defendant 2. Therefore they only used the name for intimidation purposes.

54. In the Nielsen decision, the court affirmed a decision of the lower court granting summary judgment to the plaintiffs in a class action suit brought against an attorney who sent collection letters and the financial institution on whose behalf he sent them. The plaintiffs successfully argued that the attorney's collection letter falsely suggested that an attorney had become actively involved in the financial institution's debt collection efforts, when in fact the attorney had done little more than lend his name and firm letterhead to the collection effort. The lower court and the 7th Circuit Court of Appeals agreed with the plaintiffs contention that the defendants violated the Fair Debt Collection Practices Act.

55. The actions of both parties were to use the law firms name to intimidate Plaintiffs to pay a debt of which it had denied owing or had denied paying. Plaintiffs made multiple attempts to settle a legal issue for damages. Defendant 2 only responded as a debt collector with no intent to collect.

56. Defendant 2 had no intention to collect the claimed debt although their actions were a communication to a consumer concerning a consumer debt referencing payment. They are a debt collector and likewise, Defendant 1 had no intention of them collection the debt as this was proven by the **action of Defendant 1 to act to collect the claimed debt on or about April 16th**, 2014, at our home. After coming to our front door and requesting payment they then would disconnect our service and state they would install a certain type of meter so that we could just make payment and they would be able to reconnect our service from their office. This is oppressive behavior because we had aggressively assisted upon payment for this same debt but they declined to accept. At this point we had every right to believe that the Defendant owed us damages. Rightfully so to our belief they tried to smooth over there action by not disconnecting our service for more ten days or more, but as they see we rejected their action. Defendant 2 although a debt collector just lend their name to Defendant 1.

57. Therefore Defendant 1 actions are a direct violation of the statue and as an approximate and direct result of their action or inaction we have been made to suffer and therefore are damaged.

58. Wherefore as considering the premises herein, the Plaintiffs request judgment against Defendant 1 for compensatory damages, statutory, additional, actual, perculinary losses, inconsequential damages, actual, perculinary losses, general damages, punitive damages, court cost, and any other relief the court sees fit under the circumstances.

59. *Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by*

*direct reference incorporates these paragraphs herein from all pleadings as needed.*

**60. CAUSE OF ACTION COUNT FIVE INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**

**INVASION OF PRIVACY INTRUSION UPON SECLUSION:** In order to state a claim for invasion of privacy by intrusion upon one's solitude, the plaintiff must establish a highly offensive intrusion upon his solitude or seclusion or his private affairs. Johnston, supra. See Hogin v. Cottingham, 533 So.2d 525 (Ala.1988) (holding that a wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private)

15 U.S.C. § 6801 (emphasis added) Defendants and/ or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns of affairs of the Plaintiffs, namely by repeatedly and unlawfully failing to accurately report a debt as not owed prompting an assertion of illegall attempts at the home of the Plaintiffs to disconnect service which was unwarranted and thereby invaded Plaintiffs privacy on two occassions.

**61. ADDITIONAL GENERAL STATEMENT AS TO THIS CLAIM**

Defendant 1 with absolutely no legal cause but came to OUR home and harrased US with abusive service disconnection activities unwarranted to them and us. This was based on their inaction or intentionally falsley made claim to inaccurately record the proper information on their books/records where they claim they had false information of which is not true at all. This is not true because we had documents of the right information of which they also possessed but intentionally came with false claims to disturb our privacy. This fact is further evidenced that they could not disconnect our electricity both in the month of February and March of 2014. They realized they couldn't once we showed them they had no rights to assert their illegal activities on two months in a row. What their action show is two repetive months of illegal action and or claims that caused us to suffer. Similarly the would use the same false claim of March in April that actually caused our service to be disconnected. **Our account shoud have remained private, recorded properly with proper interpretation and should not have been subject to their bill collector and diconnect serviceman unwarranted with false information and false attempts.**

62. A persons home and account are a private sanctuary of which one should not be aggravated with illegal means as Defendant 1 prompted while knowing or should have known they had documented false material facts, falsley misinterpreted it, and intentionally made false claims as to the account of the Plaintiffs or the Plaintiffs' responsibilty thereof as being a fail duty of the Plaintiffs.

63. Inside the privacy of one's home there is generally a use of electricity of which should not be disturbed or attempted to be disturbed by illegal means as prompted by Defendant 1 unlawfully using falsly made or intentionally misinterpreted documents to prompt their action on or about the first week in February and the same in March both of 2014.

64. The Plaintiffs privacy of home and falsly claimed documented account was disturbed by the Defendant 1 placing themselves directly in the front of the Plaintiffs front door no more than 10 feet on or about February, and March of 2014, with illegal attempts to disturb the Plaintiffs' privacy to have electricity of which Plaintiffs had all rights to have by possession of written record of that right.

65. Defendant 1 made or claimed illegal assertion pursuant their records of a right to disconnect our electricity on February, and March of 2014, and similarly they used their same inaccurate documentation or intentionally mad e false claims to continue their illegal agression April of 2014, claiming their books shown we did not do what we was suppose to the month prior, which was absolutely false. Why didn't they disconnect our service in March if we didn't do what we were suppose to? They couldn't legally, we paid.

66. It is the solitude and seclusion of the Plaintiffs of which was taken by Defendant 1 when they convinced us to leave the comfort of our home to enter the public eye in a false light by their aggression to threaten us that they were going to disconnect our electicity if we didn't pay them on sight but we had all rights to be left alone and with electricity of which is exactly what happened.

67. Defendant 1 on three occasions inaccurately or falsly claimed they documented our account prompting us to show our reliance to proper documenttaion through their force. Their inaccuaracy or false claims prompted their illegal assertion to disconnect our electicity or similarly claiming those inaccuracies to deny our paymnent and to claim to disconnect our lights yet again on April 16th, 2014 of which they did.

68. Therefore as an approximate and direct cause of the action or inaction of Defendant 1 impeding unlawfully against our personal affairs, accuracy of records of which we proved they were wrong, they impeded on our serenity of home and personal space with claimse of right to disconnect our electricity all illegally, we were made to suffer damages and it continues by their actions.

69. Wherefore as considering the premises herein, the Plaintiffs request judgment for compensatory damages, actual, additional, perculinary losses, inconsequential damages, statutory, general damages, punitive damages, court cost, and any other relief the court sees fit under the circumstances.

*70. Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**71. CAUSE OF ACTION COUNT SIX INVASION OF PRIVACY – FALSE LIGHT**

**FALSE-LIGHT PURSUANT COUNT EIGHT. This Court (Alabama Supreme Court) has stated the following regarding a claim of invasion of privacy by putting one in a false light:**

"`"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
"`"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

"`"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."'" Butler v. Town of Argo, 871 So.2d 1, 12 (Ala.2003)(quoting Schifano v. Greene County Greyhound Park, Inc., 624 So.2d 178, 180 (Ala.1993), quoting in turn Restatement (Second) of Torts Â§ 652E (1977)). "`A false-light claim does not require that the information made public be private,' but it does require that `the information . . . be false.'" Regions Bank v. Plott, 897 So.2d 239, 244 (Ala.2004) (quoting Butler, 871 So.2d at 12).The "false-light" version of an invasion-of-privacy claim requires that a defendant give publicity to a matter

that places one in a false light.

72. *On or about the beginning of February and of March 2014, Defendant 1 put Plaintiffs in a false light after convincing the to leave their home which is on Main Street Downtown Ariton.*

73. *Defendant 1 used inaccurate information or falsly claimed as such to invade our home and drag us into the public to threaten to disconnect our service illegally when it was unwarranted to them and us.*

74. *There were many people who watched their presence which anyone would be prompted and thought we were having our sercvice disconnected for non payment, or being demanded to pay, this happen two months in a row.*

75. *Most anyone know when Defendant 1 show up at your home at the first of the month they are coming to disconnect your services for non payment.*

76. *The problem is we were not due disconnection at all on either month the day they presented themselves.*

77. *Defendant 1 had knowledge of our proven record of not due disconnection but ignored it to publicize an illegal false hummuliating, embarrassing and oppressive action to cause our shame.*

78. *The way Defendant 1 do business for collection is put you out publically for as in our situatuin for everyone to see because we live downtown, at 44 West Main Street, Ariton, AL.*

79. *Defendant 1 knew or should have known they had just acted similarly the month before but did not correct their actions but continued the same illegal and wrongfule action the next month.*

80. *Similarly, they have taken our information and given it to their debt collection law firm of which they smeared our name again with using oppressive claims that our account were on cut off for 12 months, while using intimidating and illegal acts to force us to pay them even after they had rejected for us to pay them with falsely made claims just a few days before.*

81. *Our question would be is why does it matter how many times we have been on cut off and never cut off as to their claim that they have a right to come and disconnect your service when in fact they didn't have the right to?*

82. *The only thing those asserstion shown is more embarrassment and insult to injury because the issue of your prior position would have nothing to do with their public embarrassment and illegal attempts we complained of basically saying, Defendant 1 came to our home unwarranted two months and embarrassed us but left after confortation that they had no right being at our home, they left and our service remained.*

83. What their action more or less prove is if you were on cut off before they have a right in any subsequent months to come out and embarrass you in the public, disconnect your service illegally when they have absolutely no right to do so. This is their clear assertion in the letter April 8th, 2014.

84. It also goes to say if you complain of their previous action they will find ways to smear your name which has nothing to do with your complaint because in their letter and email they never asserted anything we done wrong in the complaints as to the issues of our complaint which was they owed us damages for two illegal attempts to disconnect our service, then using the month of March false claim to hinder our service April, and rightfully so, they didn't deny our assertions either in their letter.

85. Therefore as a direct and approximate action or inaction of the Defendant we have been made to suffer and are damaged.

86. Wherefore as considering the premises herein, the Plaintiffs request judgment for compensatory damages, actual, inconsequential damages, statutory, general damages, additional, perculinary loss, punitive damages of $75,000.00 or any amount the court sees fit applicable by law, court cost, and any other relief the court sees fit under the circumstances.

87. *Plaintiff s repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**88. CAUSE OF ACTION COUNT SEVEN TORT OF OUTRAGE**

**TORT OF OUTRAGE:** In order to prevail on a tort-of-outrage claim, a plaintiff is required to prove that the defendant's conduct "`(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" Harrelson v. R.J., 882 So.2d 317, 322 (Ala.2003) (quoting Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1043 (Ala.1993)). Additionally,"`[a]ny recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808, 810 (Ala.2001) (quoting American Road Serv. Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980)) (citations omitted).

89. Defendant 1 actions or inactions were reckless because they knew or should have known we were not due the illegal actions that prompted them to come to our home and threaten to disconnect our electricity twice and or use that same erroneous assertion from March in April to deny our payment on or about the 3rd, of April of 2014.

90. It's a fact Defendant 1 record shown we were not due to pay them or face an immediate disconnection that day on or about the first week of February, 2014, but because we had a copy of the recorded bill that stated we were not due to pay or be disconnected until at the latest, the next day or so on the first of that month, they left after confrontation causing us mental anguish and damages.

91. On or about the first week in March of 2014, Defendant 1 were reckless because yet again their record shown or should have shown or they made false claims that we had not arranged payment as agreed but the facts are we submitted a copy of our payment to their office on or about March 3rd, 2014, and had the proof we did do exactly what we were suppose to when the came to our home threatening us.

92. It's a fact we submitted a copy of our record showing they received our payment while given it

to their collection and disconnect serviceman that was at our home on or about March 4th, 2014.

93. It's a fact after submitting a copy of our bill and payment to Defendant 1 collection personal, "TR," an employee there who arranged our agreement, stated it was a mistake of the Defendant's billing office who did not correctly document our arrangement or over looked it, WE DISAGREE THAT IT WAS A MISTAKE BECAUSE OF THEIR NORMAL PATTERN OF PRACTICE ACTING THIS WAY AGAINST US the month before and the month after.

94. On or about April 3rd, 2014, Defendant 1 yet again used the same claim that WE did not do what we were suppose to on or about the first week of March, 2014, this was false again.

95. This show on two occasions Defendant 1 recklessly claim they failed to document a material fact as to our proven action but used false facts to threaten us both times to disconnect our electricity. AND then again in April they used the same falsely claimed informaiton from March to deny our payment after we asked to come in after lunch of which we believe is standard business practice of theirs or at the minum fair under the circumstance. Those circumstances being this their cut off bill states a date for cutoff but no specific time of that date, therefore logically you have to the close of business. Nevertheless, in our case they are at your home at 9 a.m. threatening to disconnect.

96. These actions caused us extremely emotionally distress and it continues because first they not only threaten to disconnect our electricity illegally but publicly humiliated and embarrassed us to shame by people we knew watching us being intimidated harrassed by falsely accused action of Defendant 1 as the facts proven.

97. Their action were so obvious until we were asked not only why Defendant 1 were at our home collecting what would seem to by obviously money we didn't pay, but Lorenzo Pearson was asked did they disconnect our electricity and he explained Defendant 1 was their illegally harrassing us as you could see. There were three people who witnessed their action that Lorenzo Pearson was harrassed on two occassions and one of which both Plaintiffs were present.

98. The actions of Defendant 1 against us is repetitive and ongoing because as of now they have surpassed the threats and false claims to actually disconnect our electricity when in fact, we tried to pay them but they refuse to accept.

99. Defendant 1 had to know we could not overcome such actions and we haven't when in fact their record clearly shown or should have shown we were not due their oppressive behavior and yet they continued to threaten to disconnect our services when they failed to accept payment at the end.

100. Then while acting under a false name with false intent they tried to intimidate us to pay or forego service with a law firm debt collector violating multiple FDCPA statue and sections.

101. They would go as far as to give our prior history to shame us while intimidating us that we could not hold them responsible for their previous illegal actions.

102. These are illegal actions of more that four times against us by Defendant 1 using very similar tactics based on false premises or intentional acts, by intimidation, harrasement, abusive debt collection tactics, with misleading information collection tactics, of which they had refused to stop.

103. Upon these circumstances we don't see how we can endure their actions because it is continued as of this date of which this complaint is asserted we are in the dark for the most part when it is a clear fact we tried to pay when due.

104. Therefore as an approximate and direct action or inaction of the Defendant 1, Plaintiffs were damaged and made to suffer which continues because then Defendant 1 hired this unbelievable law breaking debt collection law firm throwing illegal, oppressive, abusive, collection tactics to damage us even further treatenning to disconnect our service when it was Defendant 1 who denied to accept our payment.

105. Wherefore as considering the premises herein, the Plaintiffs request judgment for compensatory damages, statutory, additional, perculinary losses, inconsequential damages, general damages, punitive damages of $75,000.00 or any amount the court sees fit, court cost, and any other relief the court sees fit under the circumstances.

*106. Plaintiff s repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**107. CAUSE OF ACTION COUNT EIGHT VIOLATION OF THE FAIR DEBT COLLECTION ACT**

**AGAINST (DEFENDANT 2)**

*IN VIOLATING OF THE FAIR DEBT COLLECTION PRACTICE ACT PURSUANT 15 U.S.C. § 1692 et seq. Including but not limited to § 1692dm 1692 e, 1692 e(2), 1692e (4), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).*

108, Lawyers were originally excluded from the definition of a debt collector. However, the U.S. Supreme Court specifically addressed this issue in Heintz et al v. Jenkins, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). In Heintz, the Court found that the act applies to both debt collectors and their attorneys alike. See Heintz et al v. Jenkins, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). Additionally, debt collectors or debt buyers can be held vicariously liable for the acts of their attorneys. Newman v. Checkrite, 912 F. Supp. 1354 (E.D.Cal. 1995).

109. The Legislature followed suit by amending the act to include lawyers. In doing so, it noted in the legislative history that collection attorneys were not being sufficiently policed by the courts and bar associations and stated that removal of the exemption was necessary to "put a stop to the abusive and harassing tactics of attorney debt collectors." 1986 U.S.C.CAN 1756-57. (For an in depth discussion of the quality and quantity of collection activity to make a law firm a debt collector see Goldstein v. Hutton, Ingram, Yuzak, Gainen, Carroll and Bartolotti, 374 F. 3d 56, 62-63 (2d Cir. 2004)).

Attorneys who regularly collect debts. Heintz v. Jenkins, 514 U.S.291, 115 S.Ct. 1489 (1995) ARE LIABLE AS HERE WITH ALL VIOLATION OF FDCPA.

110, A. Fair Debt Collection Practices Act Claims

The Fair Debt Collection Practices Act ("FDCPA") was enacted by Congress "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection

abuses." 15 U.S.C. § 1692(e). The Act provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act. See 15 U.S.C. § 1692k(a). A debt collector can be held liable for an individual plaintiff's actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1)-(3). The FDCPA is a strict liability statute. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 63 (2d Cir. 1993); In re Cambron, 379 B.R. 371, 374 (M.D. Ala. 2007).

111. The "Mini-Miranda" Warnng: The FDCPA requires that a debt collector, in its initial communication (oral and written) with a consumer; state that the "debt collector is attempting to collect a debt and that any informaiton obtained will be used for that purpose." 15 U.S.C § 1692e(11). Every communication that follow must state the communication is from a debt collector. Defendant 2 did not make the statements in its initial communication or second.

112. As given enclosed herein **Exhibit A** the Defendant 1 debt collection law firm advertisement put themselves out as a firm that collect debts for companies. This is what they were doing for the Defendant 1 when sending the letter and email and from a misleading stand point that was its appearance because of false name exception. **(Exhibit B was their letter** and **Exhibit C was their email on or about April 8th, 2014,** both enclosed herein). The both were exactly the same.

*113.* Without an inclusion of the Mini-Miranda in their collection letter and email Defendant 2 has blatently violated the statue they clearly did not state the letter was from a debt collector and they were attempting to collect a debt.

114. The FDCPA regulates a cause of action against a debt collector for consumers or non consumers in certain circumstances. Abuse, harrasement, oppression, false-light, misleading action or among those issues they asserted against us.

115. A. "Consumer": any natural person obligated or allegedly obligated to pay a debt. 15 U.S.C. §1692a(3). Its a fact as plead Defendant 1 regulary for years allowed Lorenzo Pearson to set up and make payments on Clarissa Pearson's account or as the application shown our account because it bears Lorenzo Pearson's social security number and job. Whether a consumer or nonconsumer Lorenzo Pearson is situated for the damages caused by the Defendant.

116. B. "Debt": any obligation or alleged obligation of a consumer to pay money for goods or services that are primarily for personal, family or household purposes. 15 U.S.C. § 1692a. Electricity is a service rendered by Defendant 1 of which they served to us.

117. (5).C. "Debt Collectors": any person who uses any instrumentality of interstate commerce (phone, mail, email) in any business, the principal purpose of which is collection of the debts of another. 15 U.S.C. § 1692a(6). i. Attorneys who regularly collect debts. Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489 (1995) v. Anyone attempting to serve legal process.

118. As given Defendant 2 practice debt collection as given in their advertisement **Exhibit C.**

D. "Communication": conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. § 1692a. The defendant debt collection law firm clearly submitted a letter and email confirmation pertaining to what appeared to be an attempt to collect a claimed debt for Defendant 1 for two different amounts.

*119. **Exhibit B and Exhibit C on or about April 8th, 2014,** speaks for itself Defendant 2 a debt collection law firm were acting in its normal advertised business practice and did in fact send a debt collection letter and email regarding the account pursuant this claim to collect a debt as two given amounts as shown by their illegal communication without the Mini Maranda warning.*

*120. The communications were sent on or about April 8th, 2014, as a communication to collect a debt given two amounts and dates of which the Plaintiffs should make payment.*

*121. Similar, in the first amount given Defendant 2 claimed we were in default as to the amount of which they were requesting payment on April 15th, 2014, or suffer disconnection of which happened.*

*122. Although the second amount given was not due or that we had received a bill, Defendant 2 stated it was to be paid and it was owed.*

*123. We are consumers/nonconsumer under FDCPA, the debt is a consumer debt, it was contemplated to be collected by a debt collector, and they violated the statue failing to submit a Mini-Miranda, fail to validate one debt, fail to allow 30 days to dispute, and fail to validate one debt after five days of their initial confirmation. under the statues which are strict liabilities and causes of action under FDCPA they have violated in many ways.*

*124. Therefore as a direct and approximate action or inaction of Defendant 2 we were damaged and made to suffer by humiliation trying to figure out how to defend their illegal action, loss of sleep working to file this action, sick on the stomach knowing we were illegally attacked because we complained of other torturous actions of the Defendant Pea River Electric Cooperative Inc. of which all their actions and inaction have caused mental suffering, but also to include other sufferings we will prove at trial in this matter.*

***INCLUSIVE TO ALL FDCPA CLAIMS***

*125. IV. Enforcement*
A. FDCPA is a strict liability statute. 15 U.S.C. § 1692k; Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643 (S.D.N.Y. 2006).

126. Defendant 2 action violated the statues as given per claim.

127. B. FDCPA claims have a one year statute of limitations. 15 U.S.C. § 1692k(d).

128. This claim fall well before the statue of limitaion.

129. C. Claims can be brought in state or federal court. 15 U.S.C. § 1692k(d); Itri v. Equibank, N.A., 318 Pa. Super. 268, 282 (Pa. Super. Ct. 1983).

130. This court has jurisdiciton over these claims.

131. D. Upon successful litigation of an individual suit, plaintiffs/consumer are entitled to:

132. a. Any actual damages, 15 U.S.C. § 1692k(a)(1), including emotional distress, McNally v. Client Services, 2008 U.S. Dist. LEXIS 66845 (W.D.Pa. 2008); and

133. b. Statutory damages of up to $1000, 15 U.S.C. § 1692k(a)(2)(A); and

134. c. Costs expended in litigation, 15 U.S.C. § 1692k(a)(3);

135. Therefore as an approximant and direct action or inaction of Defendant 1 we have been damaged and are due damages.

*136. Wherefore as premises herein the Plaintiffs request judgment against Defendant 2 for actual damages to each defendant for failing to follow the FDCPA, the Plaintiffs also request the maximum judgment for statutory damages for each act of the Defendant's, likewise the Plaintiffs request judgment for punitive damages at the minimum of $75.000.00 or any amount applciable by law because of the illegal acts that prompted situations of embarrassment when Defendant 2 used previous accounts to scare us to pay, intimidation by the same claim we had been on cut many times which had zero bearing on an account now that they claim was due after they denied our payment, mental stress to include harrasment and abuse, and but not limited to only those acts. The Plaintiffs' request any other relief as to all claims under the circumstances to include court cost, additional damages, perculinary losses, and cost of bring this action losing time on other issues we have pressing.*

*137. Plaintiff s repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

**138. CAUSE OF ACTION COUNT NINE VIOLATION OF 15 U.S.C. § 1692c. Under FDCPA**

**AGAINST (DEFENDANT 2)**

139. (3) f. Cannot contact consumer if consumer advises debt collector in writing to cease communications OR that consumer refuses to pay. 15 U.S.C. § 1692c.

140. Defendants 1 were emailed **Exhibit D** and given a letter **Exhibit E** on or about April 3rdt, 2014 that there was no debt owed or that we refused to pay and therefore under the statue Defendant 2 had no right to attempt to collect this debt on or about April 8th, 2014 by their email and letter communication.

141. Therefore Defendant 2 should have been trying to collect a debt of which was denied as owed or that was considered as paid, or that their client clearly refused to accept.

142. The confirmation from us on or about April 3rd, of 2014 which was give to Defendant 2 clearly should have ceased a debt collection action.

143. That Defendant 2 ignored the statements of the Plaintiffs and then on or about April 8th, 2014, tried to collect the deby anyway.

144. Their action is a direct violation of the statue to cease collection activites.

145. *Therefore as a direct and approximate action of Defendant 1 we, the Plaintiffs were damaged and made to suffer by humiliation trying to figure out how to defend their action, loss of sleep working to file this action, sick on the stomach knowing we were illegally attacted because we complained of other torturous action of Defendant Pea River Electric Cooperative Inc. of which all caused mental suffering, but also to include other sufferings proven at trial in this matter.*

*146. Wherefore as premises herein the Plaintiffs request judgment for actual damages to each defendant for failing to follow the FDCPA, the Plaintiffs also request the maximum judgment for statutory damages for each act of Defendant 2, likewise the Plaintiffs' request judgment for punitive damages at the minimum of $75.000.00 or any amount applciable by law because of the illegal acts that prompted situations of embarrassment when Defendant 2 used previous accounts to scare us to pay, intimidation by the same claim we had been on cut many times which had zero bearing on an account now that they claim was due after they denied our payment, mental stress to include harrasment and abuse, and but not limited to only those acts. The Plaintiffs' request any other relief as to all claims under the circumstances to include court cost, additional damages, perculinary losses, and cost of bring this action losing time on other issues we have pressing.*

*147. Plaintiff s repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

***148. CAUSE OF ACTION COUNT TEN VIOLATION OF STATUE UNDER FDCPA FOR DECEPTIVE OR MISLEADING COLLECTION TACTICS.***

**AGAINST (DEFENDANT 2)**

146. False, Deceptive or Misleading

147. a. FDCPA provides a general prohibition against use of false, deceptive or misleading collection tactics. A collector's actions are to be interpreted from the perspective of the **"least sophisticated consumer."** Martsolf v. JBC Legal Group, P.C., 2008 U.S. Dist. LEXIS 6876 (M.D. Pa. Jan. 30, 2008); Nelson v. Select Fin. Servs., 430 F. Supp. 2d 455, 457 (E.D. Pa. 2006).

148, b. Collector cannot make any false, deceptive or misleading statements. 15 U.S.C. § 1692e, e(10).

149. Defendant 2 collection letter Exhibit B and Exhibit C show an attempt to collect a debt claiming negative averments of the account subject this suit claiming for 12 months of last year that the Plaintiffs were on cut off, this has no bearing on a bill due on or about April of 2014 that they were trying to collect and Defendant 1 refused to accept payment on false premises causing the problems in the first place.

150. This was an intimidation tactic to obtain payment made with deceptive, oppresive, and misleading collection tactics againt Plaintiffs account or claim of liabilty thereof.

151. Their action was deceptive because the contents of an account on cut off for 12 months had nothing to do with the current bill but was used to intimidate us to pay when we had prevously been

denied to pay and likewise afterward, stated we were not paying because at the point, damages had occurred surpassing any debt they claimed we did owe.

152. To include that Defendant 2 violated so many statues with misleading collection efforts that one couldn't even reason who was suppose to take the payment.

153. Their actions are a direct violation of the statue by misleading information with a threat of prior claimed negative account action that would prompt us to pay a debt we denied owing, had been denied to pay, and or accepted it was credit as paid due to Defendant 1 unlawful actions because they did not disconnect our service when they claim it was due to be disconnected. This is a direct indication they were in fault they passed a claimed given right cut off to try and smooth over their previous illegal actions we complained of.

*154. Therefore as a direct and approximate action of the Defendant 2 we were damaged and made to suffer by humiliation trying to figure out how to defend their action, loss of sleep working to file this action, sick on the stomach knowing we were illegally attacked because we complained of other torturous action of the Defendant Pea River Electric of which all caused violaitons and mental suffering, but also to include other sufferings proven at trial in this matter.*

*155. Wherefore as premises herein the Plaintiffs' request judgment for actual damages to each defendant for failing to follow the FDCPA, the Plaintiffs also request the maximum judgment for statutory damages for each act of Defendant 2, likewise the Plaintiffs' request judgment for punitive damages at the minimum of $75.000.00 or any amount applciable by law because of the illegal acts that prompted situations of embarrassment when Defendant 2 used previous accounts to scare us to pay, intimidation by the same claim we had been on cut many times which had zero bearing on an account now that they claim was due after denying our payment, mental stress to include harrasment and abuse, and but not limited to only those acts. The Plaintiffs' request any other relief as to all claims under the circumstances to include court cost, additional damages, perculinary losses, and cost of bring this action losing time on other issues we have pressing.*

*156. Plaintiffs repeats, repleads, and restates all paragraphs as though fully set out herein and by direct reference incorporates these paragraphs herein from all pleadings as needed.*

***157. CAUSE OF ACTION COUNT ELEVEN VIOLATIONS OF STATUE BELOW OF FDCPA AGAINST (DEFENDANT 2)***

*Cannot contact consumer if consumer advises debt collector in writing to* cease communications OR that consumer refuses to pay. 15 U.S.C. § 1692c.

158. Plaintiff did send a letter and email communication to deny paying claimed debt of Defendant 1 of which Defendant 2 admitted they had a copy in their letter and email communication with Plaintiffs.

159. The communication from us stated "We believe a fair assessment of the damages for an early attempt to settle with out being forced to go any further would be Pea River Electric pay us $7,500.00 and quit its illegal, embarrassing, and intimidating actions once and for all at our door. You can use the

settlement amount minus your claimed bill now and rendered a check for the balance that you own us. **As I see it, we don't owe Pea River Electric one penny, you owe us substantially."**

160. Defendant 2 after acquiring these communication sent us a debt collection letter anyway by letter and email.

161. Their action here is direct violation of the statue to cease and decease collection attempt.

162. Similar Defendant 1 disconnected our service any way on April 16th, 2014 after their claimed debt was disputed and stated as paid or that they disagreed to take payment. There action is a continued act of collecting a debt consistent with the communication of Defendant 2.

163. Therefore as and direct and approximate action of Defendant 2 we have been damaged and made to suffer mentally by being nervous, causing headaches, upset stomach, loss of work on other projects we having pressing to defend these illegal acts and or but not limited to only these sufferings we intend to prove at trial in this matter.

164. *Wherefore as premises herein the Plaintiffs' request judgment for actual damages to each defendant for failing to follow the FDCPA, the Plaintiffs also request the maximum judgment for statutory damages for each act of Defendant 2, likewise the Plaintiff s' request judgment for punitive damages at the minimum of $75.000.00 or any amount applciable by law because of the illegal acts that prompted situations of embarrassment when Defendant 2 used previous account history to scare us to pay, intimidation by the same claim we had been on cut many times which had zero bearing on an account now that they claim was due and refused our payment, mental stress to include harrasment and abuse, and but not limited to only those acts. The Plaintiffs' request any other relief as to all claims under the circumstances to include court cost, additional damages, perculinary losses, and cost of bring this action losing time on other issues we have pressing.*

**PLAINTIFFS DEMAND JURY TRIAL AS TO ALL ISSUES**

**PLAINTIFFS DECLARATION UNDER PENATLY OF PERJURY THAT THE FACTS ALLEDGED HEREIN ARE TRUE AND CORRECT DONE THIS THE 10th DAY OF MAY, 2014.**

LORENZO PEARSON AND CLARISSA PEARSON PRO SE PLAINTIFFS

---

**CERTIFICATE OF SERVICE**

Plaintiffs certify they have submitted a copy of the foregoing complaint in the U.S. Mail prepaid postage at the address of the Defendants given at their prospective address under paragraph of parties above on this the 10 th, day of May, 2014.

LORENZO PEARSON AND CLARISSA PEARSON PRO SE PLAINTIFF