IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LORENZO PEARSON, ) | |
| ) | |
| and ) | |
| ) | |
| CLARISSA PEARSON ) | |
| ) | CIVIL ACT. NO. 1:14-CV-347-WKW |
| Plaintiffs, ) | (WO) |
| ) | |
| v. ) | |
| ) | |
| PEA RIVER ELECTRIC ) | |
| COOPERATIVE INC. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the motion to dismiss and compel arbitration (Doc. 15) filed by Defendant Pea River Electric Cooperative, Inc. Having considered the motion, having held a hearing on the motion, and having allowed additional briefing on the motion, the court concludes that the motion is due to be denied as to the Plaintiffs' remaining federal claim. Further, the court concludes that the remaining federal claim this case is due to be dismissed with prejudice under 28 U.S.C. § 1915, and that the court should decline to exercise jurisdiction over the remaining state law claims.

I.  **Standard of Review**

A.  **Arbitration**

Pursuant to the Federal Arbitration Act ("FFA"), "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FFA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4.

"In considering whether respondent's agreement to arbitrate is unenforceable," the court is "mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). However, the FAA also "declare[s] a national policy favoring arbitration" *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (holding that). Thus, "as with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v.. Commc'ns Workers of Amer.*, 475 U.S. 643, 649 (1986). Generally, "[w]hen

deciding whether the parties agreed to arbitrate a certain matter" the court is to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  If, after hearing the parties on the matter, the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court shall direct the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

**B.    28 U.S.C. § 1915(e)(2)(B)(ii): Failure to State a Claim Upon Which Relief Can be Granted**

When, as here, a litigant is allowed to proceed *in forma pauperis* in this court, the court will screen the litigant's complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  Section  1915(e)(2)  requires a district court to dismiss the complaint of a party proceeding *in forma pauperis* "at any time" if court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The same standard that governs a dismissal under Federal Rule of Civil Procedure 12(b)(6) also governs the evaluation of a complaint for failure to state a claim upon which relief can be granted under 28 U.S.C. §1915(e)(2)(B)(ii). *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008) (applying the standard governing dismissal under Rule 12(b)(6) to review of a *pro se* complaint under 28 U.S.C. § 1915(e)(2)(B)(ii)).  Under this standard, although the court must accept well-pled facts as true, the court is not required to accept a

plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S, at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

In *Iqbal*, the Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 556 U.S. at 570.

When evaluating the sufficiency of a complaint, a plaintiff's *pro se* status must be considered alongside the pleading requirements of *Twombly* and *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (applying *Twombly* to a *pro se* complaint while recognizing the leniency that must be afforded to a *pro se* litigant who does not have the benefit of a legal education); *see also Douglas*, 535 F.3d at 1320-22 (reviewing the dismissal of a complaint under § 1915(e)(2)(B)(ii) while applying both *Twombly* and the rule that a *pro se* complaint is to be construed with leniency). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice"). However, the leniency shown to *pro se* litigants "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of*

5

*Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by *Iqbal*, 550 U.S. 662 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Pontier v. City of Clearwater*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995)). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd*., 399 Fed. Appx. 563, 565 (11th Cir. 2010) (unpublished) (citations omitted).

## II.   Facts and Procedural History

On September 27, 2007, Clarissa Pearson signed an application for membership in and electrical service from Pea River Electric Cooperative, Inc. ("Pea River"). (Doc. 15-3). The electrical service provided by Pea River was to be supplied to the home Clarissa Pearson shared with her husband, Lorenzo Pearson. On the application, Clarissa Pearson listed Lorenzo Pearson as the "Applicant['s] Spouse." (Doc. 15-3). The application contained the following arbitration clause:

> Any controversy or claim arising between the applicant and Cooperative or arising out of or relating to this agreement or the breach of this agreement other than for the collection of an amount owed by applicant to Cooperative shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment of the arbitration shall be final and the judgment of the arbitration shall be entered by any court of competent jurisdiction. The applicant and Cooperative agree and understand that they choose arbitration.

(Doc. 15-3).

During February and March, 2014, a dispute arose between the Pearsons and Pea River concerning whether the Pearsons' electrical service was due to be disconnected

6

because of overdue payments. (Doc. 1 ¶¶ 3-4). It is undisputed that payments were overdue; the dispute concerned whether Pea River *prematurely* threatened and/or attempted to disconnect service in attempting to collect the past due payments. (Doc. 1 ¶ 15).

On April 3, 2014, Lorenzo Pearson sent a letter to Pea River via email and United States mail (Doc. 1 ¶ 140) which was titled "FORMAL COMPLAINT AND DEMAND TO SETTLE DAMAGES." (Doc. 1-5). In the letter, Lorenzo Pearson complained that Pea River had embarrassed him and his wife by threatening to disconnect their service on the wrong date. (Doc. 1-5). He also complained that he had been insulted by Pea River personnel when he called to attempt to arrange for payment, and that those insults included informing him that, if he could not pay his electric bill, he should not have a prepaid cell phone with which to call the electric company. (Doc. 1-5). He also asserted that he and Clarissa Pearson were publicly humiliated when Pea River's service trucks parked in front of their house and Pea River employees came to their door threatening to disconnect service if the past due payments were not produced. (Doc. 1-5). Lorenzo Pearson stated in the letter:

> We believe a fair assessment of the damages for an early attempt to settle with out being forced to go any further would be Pea River Electric Pay us $7,500.00 and quit its illegal, embarrassing, and intimidating actions once and for all at my door. You can use the settlement amount minus your claimed bill now and rendered a check for the balance that you own us. As I see it, we don't owe Pea River Electric one penny, you owe us substantially.
>
> I expect a call immediately for arrangements to settle this issue once and for all. You can call me at the same luxury prepaid phone I am not suppose to have per your own employee, what kind of dumb statement is this trying to cover up your illegal activities and discriminatory actions only applying to me, because you fail to do your job. I can be reached at [phone number redacted],

7

> [email address redacted], or by mail addressed to the same of which you send my bill.

(Doc. 1-5) (sic).

On April 8, 2014, Attorney Edward M. Price, Jr., sent a letter (Doc. 1-2; Doc. 1-3) by mail and email to Clarissa Pearson on the letterhead of his firm, Farmer, Price, Hornsby, and Weatherford, P.C. ("Farmer Price"); the letter was sent to the addresses provided by Lorenzo Pearson in his FORMAL COMPLAINT AND DEMAND TO SETTLE DAMAGES. The letter stated:

> Dear Ms. Pearson:
>
> Please be advised that this law firm represents Pea River Electric Cooperative. I have been provided information that you and your husband, Mr. Lorenzo Pearson, sent to the Cooperative recently relating to your electrical service.
>
> I have reviewed the same as well as the policies of Pea River Electric Cooperative and other pertinent information.
>
> I write to you since you are the Cooperative member as evidenced by the attached Application for Membership, Exhibit "A."
>
> It appears that your husband, Mr. Lorenzo Pearson, has called the Cooperative on numerous occasions as a result of your failure to make timely payments to the Cooperative. Contrary to some of the assertions made in the information provided to the Cooperative, you do not have a right to receive electrical service. As evidenced by the Membership Application, you agree to pay for electrical service as billed and in accordance with the policies of the Cooperative.
>
> My review of the information you provided to the Cooperative and the policies of the Cooperative, reveals that the Cooperative has substantially complied with its rules and regulations and policies relating to your membership. My review also reveals that your account has been on the cut-off list for every month for the last year.

> As evidenced by your Membership Application, you agree to make timely payments for electrical service to the Cooperative I have attached hereto a copy of your most recent bill as Exhibit "B." You are currently past due for the sum of $265.32. As evidenced by Exhibit "B", the payment made by and received from OCAP was received by the Cooperative on March 28th and applied to your bill of $723.99 resulting in an unpaid balance of $265.32. You have a bill with a due date of April 21st, 2014 for current electrical usage in the amount of $203.21.
>
> The Cooperative is willing to allow you to pay the past due portion of your bill *i.e.* $265.32, until April 15th, 2014. If this amount is not paid on or before April 15th, 2014 your electricity will be disconnected on April 16th, 2014. Your current bill in the amount of $203.21 is due on April 21, 2014. If the sum of $203.21 is not paid by May 5th, 2014 your electricity will be disconnected on May 5th, 2014.

(Doc. 1-3).

On May 12, 2014, Lorenzo and Clarissa Pearson filed a *pro se* complaint against Pea River and Farmer Price. The complaint contained state law claims alleging that Pea River had committed various torts by prematurely threatening to disconnect the Pearsons' electrical service to compel them to pay their past due account. (Doc. 1 ¶¶ 3-51, 60-106). In addition, the Pearsons alleged that, in its April 8, 2014 letter, Farmer Price committed various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Doc 1 ¶¶ 107-164). The Pearsons further alleged that, under the "false name exception" to the general rule against creditor liability under the FDCPA, 15 U.S.C. § 1692a(6), Pea River is liable for the FDCPA violations allegedly committed by Farmer Price. (Doc. 1 ¶¶ 52-59).

On June 16, 2014, Pea River, joined by Farmer Price, filed a motion to dismiss and compel arbitration (Doc. 15). On June 30, 2014, the Pearsons timely filed a response to the

9

motion. (Doc. 26; *see also* Doc. 27). On August 5, 2014, the court held a hearing on the motion. (Doc. 31). Following the hearing, the court allowed additional briefing. (Doc. 30). All parties filed additional briefs. (Docs. 33, 35).

Subsequently, on August 22, 2014, Farmers Price was dismissed from this action pursuant to a joint stipulation of dismissal. (Docs. 39, 40).

### III.   Discussion

**A.   Arbitration**

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The arbitration agreement at issue in this case specifically states:

> Any controversy or claim arising between the applicant and Cooperative or arising out of or relating to this agreement or the breach of this agreement *other than for the collection of an amount owed by applicant to Cooperative* shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment of the arbitration shall be final and the judgment of the arbitration shall be entered by any court of competent jurisdiction. The applicant and Cooperative agree and understand that they choose arbitration.

(Doc. 15-3) (emphasis added).

By definition, the Pearsons' claim for violating the Fair Debt Collection Practices Act would necessarily be a "claim . . . for the collection of an amount owed by the applicant to the Cooperative" in a manner that ran afoul of the FDCPA. *See* Doc. 15 pp. 4-5 (Pea River's

motion to compel, in which Pea River characterizes the FDCPA claim as arising from the fact that "Pea River had been to Plaintiffs' home on two occasions to collect the past due service amounts or, in the alternative, to disconnect electrical service," as a claim for Pea River's "attempts to collect for energy used," and as a controversy over Pea River's "attempt to collect amounts due for electrical service owed").

Therefore, at the August 5, 2014 hearing, the court specifically asked the Defendants to explain why the Pearsons' claims do not fall within the arbitration agreement's exception for "[a]ny controversy or claim . . . for the collection of an amount owed by the applicant to Cooperative." (Doc. 15-3). Despite the fact that the Pearsons relied on the exception in their response to the motion to dismiss (Doc. 26 ¶ 5), the Defendants were not prepared to argue this point, and so the court allowed post-hearing briefing on the issue (*see* Doc. 33 p. 2).

Although Pea River expressly recognized that the purpose of allowing supplemental briefing was to provide Pea River an additional opportunity to address whether the Pearsons' claims are claims "for the collection of an amount owed" within the meaning of the exclusion in the arbitration agreement (Doc. 33 p. 2), Pea River did not address this issue *at all* in its supplemental brief. Rather, Pea River now argues that the question of arbitrability itself is to be submitted to the arbitrator because all claims that are subject to arbitration under the agreement are to be "settled in accordance with the rules of the American Arbitration Association." (Doc. 15-3). *See Terminix Int'l. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (holding that, where the parties' agreements included

11

"broadly worded arbitration clauses" providing for arbitration according to the rules of the AAA for any and all disputes arising out of the agreements, the question of the validity of the arbitration agreements was a question for the arbitrator to decide).

Pea River's argument simply begs the very question the court directed it to address. The question before the court, and the question Pea River was instructed to address, is whether the Pearsons' claims fall within the *exception* to the arbitration agreement. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs.*, 475 U.S. at 648-49. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*. at 649. By the plain terms of the arbitration agreement, only those claims that are to be "settled by arbitration" in the first place are to be settled "in accordance with the rules of the American Arbitration Association." (Doc. 15-3). Claims that fall within the exception to the arbitration agreement are *not* claims that "shall be settled by arbitration in accordance with the Rules of the American Arbitration Association." (Doc. 15-3). If the Pearsons' claims fall within the exception, then those claims are not subject to the American Arbitration Association rules, including the rule that arbitrability is a question for the arbitrator to decide. Pea River's circular argument presumes that the Pearson's claims do not fall within the exception in the first place.

"[P]arties to a contract containing an arbitration agreement certainly have the power

to limit the arbitrator's authority to consider certain claims" by including within the contract "an express provision . . . that excludes a particular grievance." *H.L. Fuller Constr. Co. v. Indus. Dev. Bd. of Vincent*, 590 So. 2d 218, 222 (Ala. 1991); *see also Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1251 (11th Cir. 2012) (holding that state law determines whether a dispute falls within the scope of an arbitration agreement). The express terms of the arbitration agreement exclude from arbitration "*any* controversy or claim . . . for the collection of an amount owed by applicant to Cooperative." (Doc. 15-3). This controversy consists of claims against the Pea River "for the collection of an amount owed by [Clarissa Pearson] to [Pea River]" in a manner that allegedly ran afoul of the FDCPA. Accordingly, the court concludes that the plain terms of the arbitration agreement exclude the Pearsons' FDCPA claim from arbitration, and that the motion to dismiss and compel arbitration is due to be denied in part as to that claim.

**B.     28 U.S.C. § 1915(e)(2)(B)(ii): Failure to State a Federal Claim Upon Which Relief Can be Granted**

The Pearsons have asserted one federal claim in their complaint against Pea River. Specifically, they allege that, under the "false name exception" to the general rule against creditor liability under the FDCPA, 15 U.S.C. § 1692a(6), Pea River is liable for FDCPA violations allegedly committed by Farmer Price in Farmer Price's April 8, 2014 letter to the Pearsons. (Doc. 1 ¶¶ 52-59, 106-164).

Generally speaking, a creditor is not considered a "debt collector" subject to the provisions of the FDCPA. 15 U.S.C. § 1692(a)(6)(F)(ii). However, 15 U.S.C. § 1692a(6)

13

provides that the term "debt collector" *does* apply to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." This so-called "false name exception" exists "to prevent deceit as to who is actually collecting the debt." *Mazzei v. The Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004). Thus, if the *creditor* sends a letter that is violative of the FDCPA, but which *falsely* appears to an unsophisticated consumer as though the letter was instead from a third party debt collector, then the creditor is liable under the FDCPA. *Id.* at 658-59; *see also Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir.1998).

The Pearsons rely heavily on *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002), in arguing that the letter from Farmer Price was actually a letter Pea River sent under the pretext of the law firm's letterhead to falsely imply that someone other than Pea River was attempting to collect the debt. In *Nielson*, which is not controlling precedent, the court found that, where a lawyer simply lent his name, signature, and letterhead to the creditor without becoming professionally "involved in [the creditor's] debt collection process in any meaningful sense," the letter was, in effect, a letter from the creditor who was using the attorney's name to give a false impression that a third party was actually collecting the debt. *Nielson* at 635. In *Nielson*, the court noted that the lawyer did not make the decision to send the letter to the debtor, did not become professionally involved in the debtor's file, did not exercise professional legal judgment in reviewing the debtor's file, and played "barely more

14

than a ministerial role in handling the responses to the letter." *Id*. at 635-37. Further, the letter was a form letter that, although approved by the creditor, was prepared and issued "en masse" by the attorney's firm using a form that had been composed before the creditor ever became a client of the firm. *Id*. at 637 The letter "was personalized only to the extent that it contained" the debtor's name and account number and the amount in arrearage. *Id*. "The letter reflect[ed] no individualized assessment of the individual debtor's circumstances or her liability," and the "assembly-line fashion in which [the attorney's] letter was issued betray[ed] the purely nominal nature of his participation in the collection process." *Id*.

In this case, however, there can be no dispute that Farmer Price was involved professionally and meaningfully in the collection dispute. The April 8, 2014 letter from Farmer Price (which the Pearsons' attached to their complaint) was not a mass-produced form collection letter; it was issued in direct response to the Pearsons' "FORMAL COMPLAINT AND DEMAND TO SETTLE DAMAGES." (Doc. 1-2 p. 2). The letter conveyed the results of the law firm's professional, individualized assessment of the Pearsons' demand for a legal settlement and the law firm's independent review of the facts and circumstances of the Pearsons' relationship with Pea River, including the fact that the contract was signed only by Clarissa Pearson, the substance of the telephone conversations between the Lorenzo Pearson and Pea River, the content of the Pearsons' demand letter, the number of times the Pearson account had been on the cut-off list within the last year, and the current amount of arrearage. (Doc. 1-2). The fact that Farmer Price sent its letter by U.S.

15

mail *and* email to the addresses the Pearsons provided in their demand letter further confirms that Farmer Price actually read the demand letter.

In other words, unlike in *Nielson*, in this case, there can be no dispute that the Farmer Price letter was, in fact, sent by a third party - the law firm of Farmer Price – and not by Pea River. Although the letter gave the clear impression that a third party had become involved in the collection dispute, that impression was not a false or misleading impression, but a true and honest one. Accordingly, Pea River was not "using a name other than [its] own" in collecting or attempting to collect its debts, the false name exception does not apply, and Pea River cannot be held liable for any alleged FDCPA violation in the Farmer Price letter. 15 U.S.C. § 1692a(6). Therefore, the Pearsons' FDCPA claim against Pea River is due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**C.     Supplemental Jurisdiction**

The court does not have original subject matter jurisdiction over the Pearsons' state law claims because those claims do not arise under federal law and complete diversity is lacking. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1332(a) (conferring original jurisdiction on the federal courts in civil actions "between citizens of different states" in which the jurisdictional amount is met).

Supplemental jurisdiction may be exercised "in any civil action of which the district

courts have original jurisdiction" over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, under 28 U.S.C. § 1367(c), when a court has dismissed all claims over which it had original jurisdiction, a federal court "has the discretion to decline to exercise supplemental jurisdiction over [the remaining] non-diverse state law claims." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). All of the Pearsons' claims against Defendant Farmer Price, including federal claims, have been dismissed. (Doc. 40). As explained in Section III.B. of this report and recommendation, the federal claim against the only remaining defendant, Pea River, is due to be dismissed for failure to state a claim upon which relief can be granted. The remainder of the Pearsons' claims against Pea River arise under state law and do not implicate matters of federal concern. Moreover, this case is in its early stages, and considerations of judicial economy, convenience, fairness, and comity weigh against exercising jurisdiction over the Pearsons' non-diverse state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that, "[c]ertainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well," particularly where the remaining state law claims are not closely tied to federal policy, because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties").

Accordingly, pursuant to 28 U.S.C. § 1367(c), the court should decline to exercise

supplemental jurisdiction over Pearsons' remaining state law claims, and those claims should be dismissed.

Moreover, this court should decline to rule on the motion to compel arbitration with respect to the remaining state law claims because the federal arbitration act does not supply an independent basis for the court to exercise jurisdiction over those claims. 9 U.S.C.A. § 4 (providing for enforcement of arbitration agreements by "any United States district court which, save for such agreement, would have jurisdiction under Title 28"); *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (holding that the FAA"'bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis' over the parties' dispute." (quoting H*all Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-582 (2008)); *Comty. State Bank v. Strong*, 651 F.3d 1241, 1252 11th Cir. 2011) ("It is a long-accepted principle that the FAA is non-jurisdictional: The statute does not itself supply a basis for federal jurisdiction over FAA petitions.").

### IV.  Conclusion

Accordingly, it is the **RECOMMENDATION of the Magistrate Judge**

1. that the motion to dismiss and compel arbitration (Doc. 15) filed by Defendant Pea River Electric Cooperative, Inc. be **denied in part** only as to the Pearson's FDCPA claim against Pea River;

2. that the Pearsons' FDCPA claim against Pea River be **dismissed with prejudice**[1] for

---

[1] "Where a more carefully drafted complaint might state a claim, a [pro se] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."

18

failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

3. that the Pearsons' remaining state law claims against Pea River be **dismissed** without prejudice; and

4. there being no other claims pending in this case, that this case be **dismissed**. It is further

**ORDERED** that the parties shall file any objections to the said Recommendation on or before **November 3, 2014.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982); *see*

---

*Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc); *see also Bettencourt v. Owens*, 542 Fed. Appx. 730, 2013 WL 5450978, 4 (11th Cir. 2013) ("A court must ... afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless an amendment would be futile."). However, there is no basis for concluding that a more carefully drafted complaint could possibly state an FDCPA claim against Pea River for Farmer Price's alleged FDCPA violations. Therefore, providing an opportunity to amend is not required under *Bank*.

*United States v. Schultz*, 565 F.3d 1353, 1362 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*); *see also Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982) (adopting as binding precedent 5th Circuit Unit B decisions); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 20th day of October, 2014.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE